IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : <br> : <br> v. : <br> : Case No.: 7:21-cr-20 (WLS-TQL) <br> CHRISTOPHER MAYO, : <br> : <br> Defendant. : <br> _____ : | |

### ORDER

Before the Court is Defendant Christopher Mayo's "Motion to Suppress Evidence and Request for Hearing." (Doc. 32.) Defendant's request for a hearing was granted, and a hearing was held before the Court on October 27, 2021. (Docs. 37, 39.) For the reasons stated herein, Defendant's Motion to Suppress is **DENIED**.

### PROCEDURAL BACKGROUND

On May 12, 2021, Defendant Mayo was charged by indictment with one count of Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). (Doc. 1.) He was taken into federal custody on June 22, 2021 after his arraignment before Magistrate Judge Thomas Q. Langstaff. (Docs. 13, 15.) At his arraignment, Mayo entered a plea of not guilty. (Doc. 16.) Defendant Mayo filed the instant motion on September 6, 2021. (Doc. 32.) Therein, Mayo asks that "the items seized from the vehicle [he] had been operating be suppressed as the product of an illegal search." (*Id.* a 7-8.) Defendant Mayo also requested a hearing on his motion, which the Court held on October 27, 2021. (Doc. 37.) Following the hearing, the Parties were given additional time to prepare post-hearing briefing on the motion subject to the hearing transcript's publication on the

1

record. (Doc. 39.) The hearing transcript was published on February 22, 2022. (Doc. 41.) Post-hearing briefing is now complete, and the motion is ripe for review.

## FACTUAL FINDINGS

At the October 27, 2021 hearing on Defendant's Motion to Suppress, the Government presented one witness, Investigator Chad Poole, who was the officer that encountered Mayo on the day of the search at issue. (Doc. 37.) The Government also presented one exhibit, the body-worn camera footage from the incident, that was admitted without objection. (Doc. 38) The Court apprised Defendant Mayo of his right to testify and put on evidence before the Court. (Doc. 41 at 39-40, 41.) Defendant Mayo was given time to discuss his options with his counsel, and ultimately decided to testify, specifically seeking to explain to the Court about his view of the motivation of the search. (*Id.* at 41-42.) Defendant Mayo did not present any other witnesses or evidence at the hearing. Upon reviewing the exhibits, witness's testimony, and Parties' arguments, the Court makes the following findings of fact.

On January 4, 2021 at approximately 3:45pm, officers with the Tift county Sheriff's Office encountered Mayo, who was in a parked, orange colored pickup truck. (Docs. 32 at 1; 36 at 2.) In his testimony, Investigator Chad Poole explained that the officers approached Mayo because he had recently researched the defendant and was aware that there was a warrant pending for him.[1] (Doc. 41 at 11.) The officers parked their vehicle and approached Mayo's vehicle, which Mayo exited on his own volition. (*Id.*) Upon Mayo's exit from the vehicle, Lieutenant Shane Mims asked Mayo for identification. (Doc. 32 at 2.) Mayo explained that he

---

[1] Investigator Poole further explained that he "had researched Mr. Mayo and spoke to probation back around Christmas, and when [he] checked [Mayo] in [the reporting system] …a warrant had popped up." The warrant was later confirmed at the scene to be a warrant for child neglect. (Doc. 42 at 11.)

2

did not have any identification. (*Id.*) However, the officers orally confirmed that they were speaking to Christopher Mayo. (*Id.*)

As the officers engaged with Mayo, Lt. Mims indicated that he could smell the odor of marijuana coming from the orange pickup truck and on Mayo's person. (Docs. 32 at 2; 36 at 2.) Investigator Poole testified that smelled the odor of marijuana coming from Defendant Mayo when he approached. (Doc. 41 at 10-11.) Poole confirmed that when Defendant Mayo approached, he can be heard on the body-worn camera footage saying, "I smell some weed." (*Id.* at 10.) Poole further explained that after it was confirmed with GCIC that Defendant Mayo did indeed have an outstanding warrant for child neglect, they arrested Mayo, and began a search. (*Id.* at 14.)

During the search, officers recovered a plastic box from the vehicle's center console. (*Id.* at 16-17.) The box recovered contained illegal substances, including suspected methamphetamine. Two of the substances were field tested and were positively identified as methamphetamine and cocaine. (*Id.* at 17.) The search ultimately yielded multiple illegal substances, including approximately thirty (30) grams of methamphetamine, twenty-four (24) grams of MDMA, fifty (50) grams of suspected marijuana, three (3) grams of powder and crack cocaine, and hydrocodone tablets. (*Id.* at 16.)

## **DISCUSSION**

In his Motion, Defendant Mayo seeks to suppress items seized pursuant to a search of his vehicle, which he argues was illegal. (Doc 32.) The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the movant,

3

Defendant "bears the burdens of proof and persuasion" that his Fourth Amendment Rights have been violated. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

**I.      Standing to Contest the Search and Seizure**

"The Supreme Court 'uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action.'" *United States v. Jones*, 184 Fed. App'x 943, 947 (11th Cir. 2006) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Thus, a person may only challenge a search or seizure under the Fourth Amendment if he has standing to contest the search, meaning that he has a legitimate expectation of privacy in the area searched that society would recognize as reasonable. *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967)); *Cooper*, 133 F.3d at 1398. To bring a successful challenge to suppress evidence under the Fourth Amendment, the moving party must be able to establish such an expectation of privacy as to demonstrate a "cognizable interest" in the property being searched. *Id.*; *see Byrd v. United States*, 138 S.Ct. 1518, 1530 (2018); *U.S. v. McBean*, 861 F.2d 1570, 1573 (11th Cir. 1988) (citing *United States v. Hawkins*, 681 F.2d 1343, 1344 (11th Cir. 1982) (cert. denied) ("[T]he proper analysis proceeds directly to the substance of a defendant's Fourth Amendment claim to determine whether the defendant had a reasonable and legitimate expectation of privacy in the article at the time of the search.").

A court must consider the totality of the circumstances in determining whether a person has standing to challenge a search or seizure. *McKennon*, 814 F.2d 1539, 1543 (11th Cir. 1987) ("Whether an individual possesses a constitutionally protected privacy interest depends

4

upon the totality of circumstances.") (citations omitted). Here, Defendant Mayo was sitting in a truck that belonged to his wife, Melissa Mayo. (Doc. 32 at 1.) He emerged from the driver's seat of the truck. (*Id.*) There is no evidence showing that he did not have permission from his wife to drive or possess the truck. Thus, the Court finds that Mayo does have standing to challenge the search of the truck. *United States v. Miller*, 821 F.2d 546, 548 (11th Cir. 1987) (finding that the defendant did have a legitimate expectation of privacy in a borrowed car).

Accordingly, the Court finds that Defendant Mayo does have standing to challenge the search and seizure that took place on January 4, 2021 under the totality of the circumstances as shown by the evidence presented.

## II. Probable Cause to Search the Vehicle

As previously noted, the Fourth Amendment to the United States' Constitution guarantees the right to be free from unreasonable searches and seizures of one's person, vehicle, or residence absent a warrant supported by probable cause. U.S. Const. amend. IV. Without consent, police are generally required to obtain a warrant prior to a search. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). However, under the automobile exception, police may search any container or compartment of a vehicle that the officer has probable cause to believe contains contraband. *See California v. Acevedo*, 500 U.S. 565, 579-80 (1991) (citing *United States v. Ross*, 456 U.S. 798, 823 (1982)). "Probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Brown v. United States*, 219 F. App'x 917, 919 (11th Cir. 2007) (citations omitted).

A police officer may conduct a warrantless search of an automobile if "'(1) there is probable cause to believe the vehicle contains contraband or other evidence which is subject

5

to seizure under the law, and (2) exigent circumstances necessitate a search or seizure.'" *United States v. Campbell,* 920 F.2d 793, 795 (11th Cir.1991) (citation omitted); *United States v. Banshee,* 91 F.3d 99, 102 (11th Cir.1996), *cert. denied,* 519 U.S. 1083 (1997). It is well-established that the smell of marijuana gives an officer the requisite probable cause to search. *See United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc) ("There is no doubt that the agent's suspicions rose to the level of probable cause when . . . he detected what he knew from his law enforcement experience to be the odor of marijuana."); *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) ("At the point marijuana was smelled by [the officer], probable cause to believe a crime had been committed . . . arose."). This "plain smell" doctrine is an expansion of the plain view doctrine and has long been recognized as grounds for probable cause to search in the Eleventh Circuit. *See United States v. Tobin*, 923 F.2d at 1512; *see also United States v. Holstick*, No. 3:17-cr-223-WKW, 2018 WL 2560331, at *3 (M.D. Ala., June 4, 2018) ("The Eleventh Circuit recognizes a plain-smell corollary to the plain view doctrine.").

Here, Investigator Poole testified that he encountered Defendant on January 4, 2021 after the Defendant exited the parked vehicle and approached him and two other officers. (Doc. 41 at 10.) Poole stated that he first noticed a "pungent" odor of marijuana emanating from Defendant Mayo when he approached the officers. (*Id.* at 10-11.) Poole confirmed that when Defendant approached, he stated that he smelled marijuana. (*Id.* at 10.) Investigator Poole indicated that his fellow officer, Lieutenant Mims, confirmed the smell of marijuana was emanating from the vehicle. (*Id.* at 14.) Poole testified that they conducted a search of the vehicle because of the odor of marijuana. (*Id.*)

Considering the record evidence, the Court finds that the smell of marijuana emanating from the vehicle gave the officers probable cause to search the vehicle. *See United States v.*

*Smith*, 481 F. App'x 540, 544 (11th Cir. 2012); *United States v. Tobin*, 923 F.2d at 1512; *United States v. Lueck*, 678 F.2d at 903. The evidence and testimony show that two officers smelled marijuana coming from the vehicle and that Investigator Poole smelled marijuana on Defendant Mayo's person. (Doc. 41 at 10, 14, 31.) Defendant Mayo did not present any evidence to counter the officer's observations. Defendant has likewise failed to present any evidence that calls into question Investigator Poole or Mims' ability to identify the smell of marijuana. *See United States v. Tobin*, 923 F.2d at 1512 (stating that a law enforcement officer's experience is sufficient to identify the odor of marijuana for the purposes of determining probable cause to search). Because the officers were able to smell the odor or marijuana coming from the vehicle, their search of the orange truck was supported by probable cause. *United States v. Williams*, 731 F. App'x 863, 868 (11th Cir. 2018) ("It is well settled that detection of the odor of marijuana furnishes probable cause to search a vehicle.") Thus, the Court concludes that the officers' actions did not violate the Fourth Amendment.

### III. Inevitable Discovery Rule

The Government contends that even if law enforcement did not maintain probable cause to search Defendant Mayo's vehicle based on "plain smell," the evidence seized would have been discovered through a routine inventory search following Mayo's arrest pursuant to the outstanding child neglect warrant. (Doc. 36 at 3.) Based on the record evidence, the Court agrees.

Under the exception for "inevitable discovery," the government may introduce evidence that was obtained by an illegal search if the government can establish a "reasonable probability that the evidence in question would have been discovered by lawful means." *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004). The government must also establish

7

that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Id.* The Government must prove to the Court that the evidence would have been lawfully recovered through a preponderance of the evidence. *United States v. Watkins*, 10 F.4d 1179, 1181-84 (11th Cir. 2021).

Here, the Government contends that the vehicle Defendant Mayo was operating would have been subject to an inventory search after his arrest on the warrant for child neglect. (Doc. 36 at 3.) Law enforcement had been searching for the orange truck prior to the encounter with Defendant Mayo on January 4, 2021 because it was witnessed at a residence linked to a drug investigation of the DEA. (Doc. 41 at 17-18.) Therefore, it is clear that law enforcement was pursuing a lawful avenue of discovery when the encounter and eventual search occurred. *United States v. Watkins*, 13 F.4th 1202, 1210-11 (11th Cir. 2021). In his testimony, Investigator Poole stated that, in Tift County, Georgia, the procedure for towing or impounding vehicles by law enforcement includes a mandatory search prior to the vehicle's removal. (Doc. 41 at 14-15.) To safely impound the vehicle, officers would have had to search the vehicle prior to its tow. (*Id.*) Investigator Poole was aware that Defendant Mayo had a warrant due to a previous search in the process of his ongoing investigatory work. (*Id.* at 11.) The warrant was confirmed on the scene prior to the search on January 4, 2021 by GCIC. (*Id.* at 11-14, 23.) Thus, the vehicle would have been subject to a routine inventory search prior to its impounding by the Tift County Sheriff's Office upon confirmation of the outstanding warrant . Accordingly, the Court finds that any contraband would have been inevitably discovered regardless of the search conducted by law enforcement during their encounter with Defendant Mayo on January 4, 2021 based on the smell of marijuana emanating from the truck. *United States v. Watkins*, 13 F.4th 1202 at 1210.

8

**IV.     Exclusionary Rule and Good Faith**

Even where a Fourth Amendment violation has occurred, the United States Supreme Court has made it clear that the suppression or exclusion of evidence is *not* "a personal constitutional right" designed to "'redress the injury' occasioned by an unconstitutional search." *United States v. Smith*, 741 F.3d 1211, 1218 (2013) (quoting *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011)). Its "sole purpose" is "to deter future Fourth Amendment violations." *Id.* at 1218-19 (citing *Davis*, 131 S. Ct. at 2432). For this reason, exclusion is "a remedy of 'last resort,' justified *only* where the 'deterrence benefits of suppression' outweigh the 'substantial social costs' of 'ignoring reliable, trustworthy evidence bearing on guilt or innocence.'" *Id.* (quoting *Davis*, 131 S. Ct. at 2427). Given the exclusionary rule's purpose, "evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional." *United States v. Leon*, 468 U.S. 897, 919 (1984) (citing *United States* v. *Peltier*, 422 U.S. at 542) (holding that evidence need not be suppressed where the officers' actions were objectively reasonable). Because the exclusionary rule "necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct," "[w]here the official action was pursued in complete good faith, [] the deterrence rationale loses much of its force." *United States* v. *Peltier*, 422 U.S. 531, 539 (1975) (citation omitted).

The Defendant has not cited, and the Court is not aware of, any law clearly establishing that the officers' conduct here was unlawful. *United States v. Williams*, 871 F.3d 1197, 1203 (11th Cir. 2017) (affirming denial of motion to suppress where "Defendant [] cites no precedent establishing a constitutional violation under these circumstances.") Rather, "[i]n determining whether an officer has conducted a reasonable search and seizure, 'the essence of all that has

9

been written is that the totality of the circumstances - the whole picture - must be taken into account.'" *United States v. Clark*, 337 F.3d 1282, 1286 (11th Cir. 2003) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). Therefore, where the officers' actions appear to be objectively reasonable when considering the totality of the circumstances facing the officers at the time, suppression is not warranted for this additional reason. *See Williams*, 871 F.3d at 1203.

Here, law enforcement had reason to believe that Defendant Mayo had an active warrant for his arrest. The investigators had previous knowledge of Defendant Mayo and had information that he may have been involved in drug related activity that was subject to an investigation. (Doc. 41 at 18.) When officers approached, Defendant Mayo voluntarily exited the vehicle he was operating and approached. As he approached, Investigator Poole indicated verbally that he smelled the odor of marijuana. Another officer, Lt. Mims, indicated that he smelled the odor of marijuana emanating from the vehicle's open door. Because of the odor of marijuana, a search of the vehicle was conducted, yielding illegal contraband that was seized by law enforcement. Thus, under the totality of the circumstances, the Court finds that even if one or more of the officers' actions here was a Fourth Amendment violation, the officers acted reasonably and therefore, in any event, the exclusionary rule does not apply under these circumstances. The Constitution protects only against "unreasonable searches and seizures," and the officers did not act unreasonably here. U.S. Const. amend. IV. For these reasons, suppressing evidence in this case would not deter any known unconstitutional conduct, and any deterrent effect is greatly outweighed by the significant social costs that would be imposed by suppression. *Hudson v. Michigan*, 547 U.S. 586, 588 (2006) (holding that the social costs of letting the guilty go free, generating a flood of alleged violations, and preventing officers from

10

engaging in reasonable conduct greatly outweigh the deterrent effect of suppression, especially where other avenues deter these violations). Therefore, for all the reasons stated and conclusions reached above, suppression is not warranted in this case.

## CONCLUSION

Accordingly, for the foregoing reasons based upon the totality of the circumstances as shown by the evidence presented, Defendant Mayo's "Motion to Suppress Evidence" (Doc. 32) is **DENIED.**

**SO ORDERED**, this 19th day of July 2022.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**