IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : Case No.: 7:21-CR-20 (WLS-TQL-1) |
| CHRISTOPHER MAYO, | : |
| | : |
| | : |
| Defendant. | : |
| | : |

**ORDER**

Before the Court are Defendant Mayo's Motion to Withdraw Plea of Guilty (Doc. 63) and his Amended Motion to Withdraw Plea of Guilty (Doc. 78). For reasons that follow, Defendant's Motions to Withdraw Plea of Guilty (Docs. 63 & 78) are **DENIED**.

**RELEVANT PROCEDURAL HISTORY & BACKGROUND**

On May 12, 2021, Defendant Mayo was charged with Count One of the Indictment (Doc. 1), which charged him with Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii). He was arraigned before United States Magistrate Judge Thomas Q. Langstaff on June 22, 2021, and consented to pretrial detention. (Doc. 13); (Doc. 15, *text only*). The Federal Defenders of the Middle District of Georgia, Inc., entered its appearance for Defendant Mayo on June 23, 2021. (Doc. 18). A few days later, the Federal Defender filed a Motion to Withdraw as Attorney (Doc. 25), after reviewing discovery material from the Government and uncovering a "fatal conflict of interest" that warranted the Federal Defender to withdraw. The Motion to Withdraw as Attorney was granted on July 22, 2021 (Doc. 30), and Judge Langstaff subsequently appointed Mr. William Bubsey to represent Defendant Mayo. (Doc. 31).

On September 6, 2021, Defendant filed a Motion to Suppress and Request for Hearing. (Doc. 32). The Government filed its Response on September 27, 2021. (Doc. 36). The Court held a hearing on Defendant's Motion to Suppress on October 27, 2021, and instructed the Parties to file their post-hearing briefs once transcript from the hearing became available. (Doc. 39). On February 22, 2022, the transcript became available. (Doc.

1

41). On March 17, 2022, a Joint Response (Doc. 43) was filed, which stated that both Parties have conferred and agreed that neither Party intended to file supplemental briefing in this matter. Instead, the Parties asked the Court to consider the originally filed briefing materials filed before the hearing to rule on Defendant's Motion to suppress. (Doc. 43, at 2). In July of 2022, the Court denied Defendant's Motion to Suppress. (Doc. 53).

Thereafter, a change of plea hearing took place on October 13, 2022, and the Court accepted the Parties' plea agreement and plea of guilty after conducting an extensive Rule 11 inquiry. (Doc. 79).

Subsequently, a draft presentence investigation report (Doc. 61) was filed on December 15, 2022. A few days later, on December 30, 2022, Mr. Bubsey filed a Motion to Withdraw Plea of Guilty on behalf of Defendant Mayo. (Doc. 63). Therein, Mr. Bubsey explained that Defendant Mayo indicated he wanted to withdraw his plea of guilty based on some documentation or case discovery that he received from his state public defender. (Doc. 63, at 2). The Government filed its Response (Doc. 66) on January 9, 2023, opposing Defendant's Motion to Withdraw Plea of Guilty.

After reviewing Parties' briefs, the Court determined that two hearings were necessary: (1) a hearing on attorney representation of Mr. Bubsey and; (2) a hearing on Defendant's Motion to Withdraw his Plea of Guilty. (Doc. 65). The Court first held the hearing on attorney representation on January 19, 2023, and heard from Defendant Mayo, Mr. Bubsey, and the Government. (Doc. 68, *text only*). Ultimately, Defendant Mayo did not seem to know and could not explain to the Court as to how exactly his state discovery differed from discovery in the instant federal case. If anything, the Court determined that Defendant's state discovery was the same as federal discovery and that Defendant Mayo failed to show any failure on the part of Mr. Bubsey or that Mr. Bubsey rendered ineffective assistance. However, both Mr. Bubsey and Defendant Mayo stated to the Court that their relationship had been "irretrievably broken," and it was made clear to the Court that they would not be able to work together on this case going forward. (Doc. 69). For this reason, the Court granted Defendant Mayo's request for a change of attorney. Subsequently, Judge Langstaff appointed Ms. Ashley Carnage to represent Defendant Mayo on January 23, 2023. (Doc. 70).

Thereafter, Ms. Carnage filed an Amended Motion to Withdraw Plea of Guilty on behalf of Defendant Mayo (Doc. 78) on April 2, 2023. The second hearing took place on April 6, 2023, which was on Defendant's Motion to Withdraw Plea of Guilty. At that hearing, both Mr. Bubsey and Defendant Mayo testified as to Mr. Bubsey's performance and representation of Defendant Mayo. The Government and Ms. Carnage conducted direct and cross examination of Mr. Bubsey and Defendant Mayo. (Doc. 89). At the conclusion of the hearing, the Court instructed Parties that once the transcript of the hearing became available on the record, the Defendant would have fourteen days from the publication of the transcript to file his post-hearing brief. Thereafter, the Government would have fourteen days to file a response, and subsequently, Defendant would have seven days to file a reply. (Doc. 85).

The transcript of the hearing on Defendant's Motion to Withdraw Plea of Guilty became available on April 20, 2023. (Doc. 89). Ms. Carnage filed Defendant's Response in Support of his Motion to Withdraw his Guilty Plea on April 30, 2023. Thereafter, the Government timely filed its Response (Doc. 92) on May 12, 2023. Defendant did not file a reply.

## **DISCUSSION**

The issue before the Court is whether Defendant Mayo should be allowed to withdraw his plea of guilty. Once a court accepts a plea of guilty, a defendant may withdraw his guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11 (d)(2)(B). Generally, there is a "strong presumption that statements made during a plea colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Important to note, a defendant has no absolute right to withdraw a guilty plea and bears a "heavy burden to show his statements under oath were false." *United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

"In determining whether a defendant has met this burden, a district court 'may consider the totality of the circumstances surrounding the plea,' including '(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be

3

prejudiced if the defendant were allowed to withdraw his plea.'" *United States v. Perez-Hernandez*, 490 F. App'x 275, 277 (11th Cir. 2012). A district court need not find all the four factors; if the first and second factors are found, district court does not have to give "considerable weight" to the third or fourth factors. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987) (finding that because the district court found the first two factors, the third factor (judicial resources) and the fourth factor (prejudice to the government) did not need to be assessed or given "considerable weight" or "particular attention").

A plea is made knowingly and voluntarily if it is entered without coercion and with understanding of the nature of the charges and consequences of the plea. *United States v. Fuenmayor-Arevalo*, 490 F. App'x 217, 227 (11th Cir. 2012). In the event a defendant appeals the district court's ruling on a motion to withdraw a plea of guilty, it shall be subject to an abuse of discretion standard. *Medlock*, 12 F.3d at 187.

## I. Close Assistance of Counsel

Defendant argues that he did not have close assistance of counsel. But Defendant's own arguments indicate to the Court that he did have close assistance of Mr. Bubsey. Defendant contends that Mr. Bubsey met with Defendant on the day that he signed the plea agreement "with the understanding that it would not be turned in unless [Defendant] could plea[d] without a waiver of his appeals rights and unless he changed his mind."[1] (Doc. 90, at 3–4). Defendant contends that Mr. Bubsey submitted the plea agreement without his consent.[2] He then adds that Mr. Bubsey also "came back" to him after submitting the plea

---

[1] After making this argument, however, Defendant immediately concedes that a waiver of appeals right is standard in plea recommendations for federal court, so "that would not have changed [anyways]." (Doc. 90, at 4).

[2] But at the April 6th hearing on his Motion to Withdraw Plea of Guilty, Defendant testified that he understood "now" that Mr. Bubsey's submitting or e-mailing a copy of the signed plea agreement to the Courtroom Deputy did not mean that he was actually entering his plea of guilt. (Doc. 89, at 61). Defendant also testified that he understood "now" that he had not entered a guilty plea until after the Court conducted the plea colloquy. (*Id.*) Mr. Bubsey also testified that he had to submit the plea agreement to the Courtroom Deputy to secure a plea date. (*Id.* at 23). Despite these acknowledgments from Defendant that he understood submitting the plea agreement to the Courtroom Deputy was not the same as entering it, Defendant continued to contend that Mr. Bubsey "tricked" him into entering a plea agreement. (*Id.* at 60).

4

document to the Courtroom Deputy to share with Defendant the guideline range estimated by Mr. Bubsey. (*Id.*) Important to note, Defendant testified that Mr. Bubsey's "estimate" of the possible sentence made Defendant "a bit more comfortable" or "comfortable enough" to go forward with the plea hearing. (*Id.*) Defendant further notes that Mr. Bubsey also met with him on "the day of the change of plea hearing with probation" for the presentence investigation report.[3] (*Id.*)

Conversely, the Government argues that Defendant had close assistance of Counsel. (Doc. 92, at 5). The Government contends that Defendant admitted at the April 6th hearing that Mr. Bubsey had visited him more than once to discuss the plea offer. (*Id.* at 6); (Doc. 89, at 45). It also points to Defendant's signed and initialed written plea agreement that states in the first paragraph that "Defendant acknowledges that Defendant has reviewed and discussed the Indictment against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant his understanding of the Government's evidence." (*Id.*); (Doc. 59, at 1). The Plea Agreement further indicates that Defendant was "satisfied with the services of Defendant's attorney." (Doc. 92, at 5); (Doc. 59, at 2). Additionally, the Government contends that during his plea colloquy with the Court, Defendant admitted, under oath, that he was satisfied with Mr. Bubsey's representation and confirmed that he had an opportunity to talk about his case and charges against him with Mr. Bubsey, and "to review the indictment, to discuss the Sentencing Guidelines, and to go over the terms of his plea agreement." (Doc. 92, at 5–6).

After reviewing both Parties' briefs, relevant record, and considering the transcripts from the April 6th hearing (Doc. 89) and the change of plea hearing (Doc. 79), the Court finds that Defendant had close assistance of counsel. Defendant's own post-hearing brief

---

[3] In arguing that he did not have close assistance of counsel, Defendant also notes that Mr. Bubsey originally answered "yes" before changing his answer to "no" to Ms. Carnage's question of whether Mr. Bubsey had Defendant sign the plea agreement to save him a trip from Tallahassee, Florida, to Cordele, Georgia, at the April 6, 2023 hearing. (Doc. 90, at 4). However, Defendant does not cite to where in the transcript (Doc. 89) Mr. Bubsey initially answered "yes" and then changed the answer to "no" when he testified at the hearing. The Court heard the testimony and read the entire transcript. If anything, the Court found that Mr. Bubsey had not answered "yes" or given any affirmative answer to Ms. Carnage's questions of whether he wanted Defendant to sign the plea agreement just so that he did not have to drive from Tallahassee to Cordele. (*See* Doc. 89, at 40).

(Doc. 90) also shows that Mr. Bubsey met with Defendant more than once to discuss the plea agreement and matters related to it.

   II.   **Knowing and Voluntary Plea**

Among the four factors, the second factor—whether the plea was entered knowingly and voluntarily—is Defendant's main argument in seeking to have his plea of guilty withdrawn. (*See generally*, Docs. 90; 89; 78). Defendant argues that the plea was not knowingly or voluntarily entered because Mr. Bubsey submitted the plea recommendation without his consent, and Mr. Bubsey did not advise Defendant on career offender status. (Doc. 90, at 4). Defendant contends that he "depended" on Mr. Bubsey's "calculated" or estimated guideline range, even though he later discovered Mr. Bubsey's calculation was "incorrect." (*Id.* at 2, 4). Defendant then essentially argues that if Mr. Bubsey did not submit the signed plea agreement to the Courtroom Deputy, then the change of plea hearing would not have occurred, and thus, he would not have had to be "untruthful on the record." (*Id.* at 2). The Court finds Defendant's argument to be a stretch and unpersuasive.

To illustrate, at the April 6th hearing, Defendant said that he understood "now" that Mr. Bubsey act of submitting or e-mailing the signed plea agreement to the Courtroom Deputy to set a date for the change of plea hearing was not the same as Defendant entering a plea agreement. (Doc. 89, at 65). But even assuming arguendo that Defendant did not initially understand this distinction, his argument is meritless. First, Mr. Bubsey testified that he told Defendant that if Defendant decided that he did not want to go through the change of plea hearing, then "that would be the end of it" and they would instead proceed to trial. (Doc. 89, at 24, 40). Second, this Court conducted a thorough Rule 11 colloquy with Defendant to fully apprise Defendant of all of his fundamental rights and to clearly ascertain whether Defendant' was entering his plea of guilty knowingly and voluntarily. (Doc. 79).

At Defendant's change of plea hearing held on October 13, 2022, which took nearly forty (40) minutes, this Court conducted the plea colloquy to confirm that Defendant understood the plea agreement, the rights that he was waiving, that Defendant was satisfied with Mr. Bubsey's services, and that Defendant had not been coerced into entering a plea. (*Id.* at 9–10, 20, 26, 33, 37–38). In addition, the Court fully explained to Defendant how the case would proceed and what his rights would be for pleading not guilty or, on the other

6

hand, pleading guilty to Count One before proceeding to ask and confirm with Defendant about his ultimate decision to enter a plea of guilty. (Doc. 79, at 18–24). Defendant also acknowledged that he understood, had no questions, and requested no further explanations nor clarification regarding his rights or the process. (*Id.* at 10, 26, 37). Importantly, all of his responses were given under oath. (*Id.* at 4–5). *United States v. Bandzul*, 652 F. App'x 860, 861 (11th Cir. 2016) ("Statements made under oath by a defendant during a plea colloquy receive a strong presumption of truthfulness.") (citing *Medlock*, 12 F.3d at 187).

The Court also made clear to Defendant that there was no guarantee as to what Defendant's sentence would be.[4] (Doc. 79, at 27). Defendant also concedes that the Court did ask him about the sentencing guidelines "as the Court always does in its plea colloquy" and then asserts that ultimately, it is up to the Court "to make a determination as to the credibility of Mr. Mayo's testimony. . . ." (Doc. 90, at 5). Furthermore, Defendant admitted that he was aware—both in the written plea agreement and during the plea colloquy—of the maximum possible sentence associated with Count One, which was the subject of the guilty plea, and that he was aware the actual sentence ultimately would be determined by the Court. (Doc. 89, at 67).  Additionally, at the change of plea hearing, the Court explained to Defendant that "if the advisory guideline range were to turn out to be different than [Defendant] now expect[s] it to be and [Defendant] plead[s] guilty, [Defendant] would not be able to withdraw [his] plea of guilty on that basis," to which Defendant answered that he understood. (Doc. 79, at 28); (Doc. 92, at 8). Yet, this is precisely what Defendant appears to

---

[4] **The Court**: . . . your attorney may have told you what he believes your advisory guideline range will be for pleading guilty to Count One based on what he now knows and understands or the Government's Counsel may have given you her views of it or others. **The fact is, however, no one knows with certainty at this time what your advisory guideline range will be if you plead guilty to Count One.** It could be just as it is suggested to be, it could be longer or it could be shorter, and the reason for that is the presentence investigation report that I explained and described earlier has not yet been prepared, and once it's prepared and at sentencing, since either you and/or the Government might have objections to it, and depending how the Court might rule, that could change the advisory guideline range. Do you understand?

**Defendant**: Yes, sir.
(The Change of Plea Hearing Transcript, Doc. 79, at 27–28).

7

be attempting to do now. That is, Defendant entered a plea of guilty apparently with the knowledge of Mr. Bubsey's estimate of the guideline range. Defendant thought the estimate was "sensible"; however, apparently when Defendant realized the actual guideline range was different than Mr. Bubsey's initial calculation, it appears that Defendant then decided that he wanted to withdraw his plea of guilty. (Doc. 79, at 48, 84–85).[5] In view of the Court's full explanation and Defendant's acknowledgment, such reason does not constitute "fair and just reason" to permit Defendant to withdraw his plea of guilty. *See United States v. Garcia*, 213 F. App'x 817, 820 (11th Cir. 2007).

The bottom line is that this Court accepted Defendant's plea of guilty only after conducting a detailed Rule 11 inquiry to ensure his guilty plea was knowing and voluntary. (*Id.* at 38). Ultimately, the Court finds that Defendant's testimony and arguments, that he entered his plea of guilty not knowingly nor voluntarily, are unconvincing and not supported by the transcripts or relevant record in this case. Thus, Defendant failed to satisfy the second factor.

Because Defendant failed to satisfy the first and second factors, the Court need not address the third and fourth factors. *Gonzalez-Mercado*, 808 F.2d at 801. Notably, Defendant also did not present much argument for the remaining two factors. Nevertheless, because Defendant included some arguments for the third and fourth factors, the Court will assess them as well.

---

[5] **Defendant**: [I]t was pretty reasonable because it started with like, [Mr. Bubsey] was showing me like a level 23, you plea out to 80 months, you do 65 percent, you wind up doing something like 44 months and something. [Mr. Bubsey] had convinced me pretty good with it. (Doc. 89, at 45).

**The Government**: And why is it that during the plea and sentencing hearing—the change of plea hearing when the Court was asking you the colloquy did you not say anything about Mr. Bubsey and what he—what you're alleging that he had done?

**Defendant**: Cause, like I say, he had showed – the charge he was showing me with the 44 months it was looking pretty nice to me, I had done almost two years, and three more months to go on it, you know, it seemed pretty sensible.

(Transcript of April 6th hearing on Motion to Withdraw Plea of Guilty, Doc. 89, at 45).

8

### III.  Judicial Resources

As to the third factor, which looks to whether judicial resources would be conserved if Defendant was permitted to withdraw his plea, Defendant simply states that "[t]he Court would have to determine whether an effort to conserve judicial resources should override Mr. Mayo's right to a jury trial." (Doc. 90, at 5). On the other hand, the Government argues that judicial resources have already been "wasted in chase of Defendant's lies to date and would continue to be wasted in allowing Defendant to withdraw his plea." (Doc. 92, at 12). The Government further contends that "significant resources have been expended in this case to date via multiple motion hearings, the appointment of replacement counsel, and similar matters." (*Id.*) The Court finds that judicial resources would not be conserved by allowing Defendant to withdraw his guilty plea. Thus, the Court determines that Defendant failed to satisfy the third factor.[6]

### IV.  Prejudice to the Government

Lastly, the fourth factor looks to whether the Government would be prejudiced if Defendant was permitted to withdraw his plea of guilty. Defendant argues that the Government will not be prejudiced if he was allowed to do so because the Government still possesses discovery and has access to witnesses in this case. (Doc. 90, at 5). Conversely, the Government argues that "any weight given to [the fourth] factor weighs against allowing the withdrawal of the plea" because of time and resources already expended in this case for Defendant's instant Motion to Withdraw Plea of Guilty and for "multiple hearings" that were held related to the Motion. (Doc. 92, at 12). It is undisputed that the Government would have to expand substantial resources in the preparation and presentation of its evidence in order to meet its high burden of proof at a trial of this matter. The Court agrees with the Government and finds that the fourth factor weighs against Defendant.

---

[6] Defendant contends that the Court must determine whether conserving judicial resources "override" Defendant's right to a jury trial. (Doc. 90, at 5). The Court respects and considers in depth every defendant who comes before the Court and their rights. (*Id.*) However, the Court reminds Defendant that this is not a matter of whether Defendant's right to a jury trial "should override" conservation of judicial resources. The issue is whether Defendant Mayo may be permitted to withdraw his guilty plea. And the Court finds Defendant failed to meet his burden of demonstrating a fair and just reason for withdrawing his guilty plea.

9

## CONCLUSION

For aforementioned reasons, Defendant's Amended Motion to Withdraw Plea of Guilty (Doc. 78) as well as his Motion to Withdraw Plea of Guilty (Doc. 63) are **DENIED**. Accordingly, Counsel for the Government and Defense Counsel are **ORDERED** to contact the Courtroom Deputy immediately to set the time and date for Defendant Mayo's sentencing hearing.

**SO ORDERED**, this  16th  day of June 2023.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**